**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**TERRY POWELL, DBA AND FBO
TERRY POWELL LOGGING AND
DOUBLE T TRUCKING, INC.**                                                    **PLAINTIFFS**


**VERSUS**                                        **CIVIL ACTION NO. 2:05cv79KS-MTP**


**LIBERTY MUTUAL INSURANCE COMPANY,
AND LM INSURANCE CORPORATION,
AND LIBERTY MUTUAL GROUP, INC.,
AND JOHN DOES I - X**                                                    **DEFENDANTS**


## MEMORANDUM OPINION AND ORDER

This matter is before the court on Motion for Summary Judgment **[#52]** filed on

behalf of the defendants.  The court, having reviewed the motion, the response, the

pleadings and exhibits on file, the briefs of counsel and being otherwise fully advised in

the premises finds that the motion should be granted in part and denied in part.  The

court specifically finds as follows:


## FACTUAL BACKGROUND

This case arises out of the alleged wrongful cancellation of a workers'

compensation insurance policy issued to Double T Trucking, Inc. ("Double T") by LM

Insurance Corporation ("Liberty").  Liberty issued the policy to Double T as the assigned

servicing carrier for Double T under the Mississippi Workers' Compensation Assigned

Risk Plan ("Assigned Risk Plan").  Plaintiff Terry Powell D/B/A Terry Powell Logging

("Powell Logging") at all times relevant to this lawsuit, was a sole proprietorship, owned

solely by Terry Powell.  Powell Logging primarily performed timber cutting operations

under contract with Weyerhaeuser Corporation ("Weyerhaeuser").  Plaintiff Double T at

all times relevant to this lawsuit, was a corporation with shares equally divided between

Terry Powell, and his spouse, Tonya Powell.  Powell Logging cut the timber and Double

T transported it to Weyerhaeuser.  Double T did not have a separate contract with

Weyerhaeuser to haul its harvested timber.

The plaintiffs claim that Liberty wrongfully cancelled the policy on November 28,

2003, for nonpayment of premiums and that this cancellation resulted in the loss of their

contract with Weyerhaeuser.  The plaintiffs allege multiple causes of action arising out

of Powell Logging's loss of the Weyerhaeuser contract.  The facts underlying the cause

of action are rather important to an understanding of the case and thus the court will set

them forth is some detail as gleaned from the parties' briefs.


**The Mississippi Workers' Compensation Assigned Risk Pool**

The Mississippi Workers' Compensation Assigned Risk Plan was created by the

Legislature to provide workers' compensation coverage to employers who are unable to

obtain insurance in the "voluntary market".  Miss. Code Ann. §71-3-111.  The statute

directs "the Department of Insurance to promulgate such rules and regulations as will

enable the department to provide the Mississippi Workers' Compensation Assigned

Risk Plan for the assignment of risks" which are required to have workers'

compensation insurance but which are unable to obtain it. *Id.*

The statute also provides for the establishment of the Mississippi Workers' Compensation Assigned Risk Pool and makes the Commissioner of Insurance responsible for the administration of both the Plan and the Pool. *Id.*  The Commissioner of Insurance has delegated authority to Compensation Insurance Services ("CIS") to administer the Assigned Risk Pool.  Miss. Comm'n Ins. Reg. 96-102.  Policies issued through the Assigned Risk Plan are administered by "servicing carriers", which consist of the insurance companies licensed to sell workers' compensation insurance in Mississippi.  Miss. Comm'n Ins. Reg. 96-101.  The policy at issue in this case was administered by Liberty pursuant to the rules and regulations of the National Council on Compensation Insurance ("NCCI").


**Double T's Application for Insurance**

On April 30, 2003, Tonya Powell submitted an application on behalf of Double T to CIS, requesting workers' compensation insurance.  On May 2, 2003, Missy Tickner of CIS acknowledged receipt of the application to the plaintiffs' insurance agent, Leo A. DeOrnellas ("DeOrnellas") of the Ross-King-Walker agency in Columbia, Mississippi. CIS also requested additional information regarding Double T, including a description of the operations of Double T, prior to binding coverage.  On May 6, 2003, DeOrnellas responded to CIS's request:

> 1.    In response to your request on Double T. Trucking, Inc, please see the attached. A further description as to the operations of Double T. Trucking, Inc. is as follows:
>
>> Applicant operates a fleet of 7 tractor/trailer log trucks hauling product (harvest timber) from various logging

sites as well as mill to mill under contract with Weyerhaeuser Corp. They are under contract to transport timber as requested. Trucking is under private contract.

DeOrnellas also requested CIS to "endorse the application on file to include additional named insured Terry Powell dba Terry Powell Logging" and provided a check authorization form with a photocopy of Powell Logging's check in the amount of $10,567, representing a 25% down payment on the Powell Logging coverage.

On May 7, 2003, CIS sent DeOrnellas the following request for information regarding Powell Logging:

> 1. It was indicated on the fax I [CIS] received on 05/06/2003 that Terry Powell d/b/a Terry Powell Logging is to be combined with Double T. Trucking, Inc. They can be combined only if there is common majority ownership between the two named insureds and as indicated on the ERM-14 there is no common majority ownership. The ERM-14 indicates that Terry Powell owns 50% and Tonya Powell owns 50% of Double T. Trucking, Inc., but the original application I received indicates that Terry Powell owns 100% of Double T. Trucking, Inc. Please confirm exact legal ownership of Double T. Trucking, Inc. and provide us with the articles of incorporation for Double T. Trucking, Inc.

> 2. If there is not common majority ownership between Double T. Trucking, Inc. and Terry Powell d/b/a Terry Powell Logging then a separate policy for Terry Powell d/b/a Terry Powell Logging must be obtained. Please submit an Accord 130 and 133 for Terry Powell d/b/a Terry Powell Logging.

**Powell Logging's Separate Application for Insurance**

As a result of the foregoing, on May 12, 2003, Terry Powell submitted a separate application to CIS requesting workers' compensation insurance coverage for "Terry

4

Powell D/B/A/ Terry Powell Logging."  On May 13, 2003, CIS rejected the application for

"Terry Powell d/b/a Terry Powell Logging" because the check received for payment of

the premium was returned by the bank for "stop payment", which CIS determined was a

deliberate act by the applicant thus making it ineligible for coverage.


**The Policy Issued to Double T**

On May 14, 2003, CIS issued a Policy Binder to Double T, with an effective date

of May 1, 2003, and assigned Liberty to be the servicing carrier.  Liberty subsequently

issued Double T policy no. WC5-35S-341175-013 ("the policy") with effective dates of

May 1, 2003 to May 1, 2004.

On August 7, 2003, Liberty' underwriter, Gerri Voigt, received a telephone call

from Tonya Powell.  According to Mrs. Powell, Weyerhauser would not accept the

certificate of insurance "the way the [policyholder] is showing their name."  Voigt told

Mrs. Powell to get a Form ERM-14 from their agent to make the requested changes.

She also made a note in the file, which read in relevant part:

> per phone call from ph/tonya. A cert holder (Weyerhaeuser)
> will not accept cert the way ph is showing their name. Told
> ph to get erm 14 form from agt if they want to chg name to
> include terry powell.

On August 7, 2003, Tonya Powell faxed a Form ERM-14 to Liberty.  The ERM-

14 is used to advise the carrier of changes in ownership of an insured as a result of

name change; combination of separate entities; sale, transfer or conveyance of

ownership interest; merger or consolidation; formation of a new entity; sale, transfer or

conveyance of an entity's physical assets to another entity, and establishment of a

trustee or receiver.  On the form submitted by Tonya Powell, she checked "combination

of separate entities.  The note submitted by Mrs. Powell with the ERM-14 stated:

> Ms. Gerry,
> The only reason I'm requesting this change is for Weyerhaeuser.  We
> signed our contracts Terry Powell Logging And Double T. Trucking was
> formed.  Please fax certificate ASAP to 601-736-3252.

Based on Tonya's ERM-14, Liberty changed the name of the policyholder on

policy no. WC5-35S-341175-013 from "Double T Trucking, Inc." to "Terry Powell

Logging."  Liberty also advised NCCI of the name change, as it was required to do as a

servicing carrier.

On or about October 27, 2003, Liberty received a letter from NCCI, dated

October 22, 2003, advising that Double T. Trucking, Inc. and Terry Powell Logging were

"***not*** combinable."  The NCCI's letter stated:

> We are in receipt of ownership information dated 10/08/2003.  We have
> ruled that, effective 10/08/2003, the following are ***not*** combinable for
> experience rating:
>
> Double T Trucking Inc.
> Terry Powell Logging Inc.
>
> This ruling is based on the ownership rule which states that business
> entities held by common majority ownership are combinable for
> experience rating purposes.

Based on the NCCI's determination, Powell Logging was not entitled to coverage

under the policy. Only Double T was entitled to coverage.  However, Liberty took no

action at this time to rectify the incorrect name change on the policy and apparently did

not notify either the agent, DeOrnellas, or the Powells.

**Cancellation of the Policy**

Between July and October, 2003, Liberty had issued several notices of
cancellation on the subject policy for failure to pay premiums required by the policy.
However, the policy holder brought the premiums current each time before any such
cancellation went into effect.

On October 24, 2003, Liberty issued a third "Notice of Cancellation", advising
that the policy would be cancelled, effective November 28, 2003, if the amount of
$13,563.00 was not received on or before the cancellation date.  The policy holder
made a partial premium payment and thereafter, Liberty issued a credit, making the
premium balance due $6,600.00.

The policy and the cancellation notices sent to the plaintiffs directed that
payment be sent to Liberty Mutual Insurance Group, 75 Remittance Dr., Suite 1837,
Chicago, IL 60675-1837.  However, when the credit memo was issued changing the
balance due to $6,600.00, it directed that the payment be sent to Liberty Mutual
Insurance Group, P.O. Box 0569, Carol Stream, IL 60132-0569.  Accordingly, on
November 20, 2003, Tonya Powell mailed a check for $6,600 to the Carol Stream,
Illinois address.  Liberty received the check on or about November 22, 2003, and
subsequently posted a credit in the computer system ("the old system") from which the
credit memo was sent.

However, because the check was posted in the old system, it was not posted as
a payment for the premium due in the new computer system to which the Liberty
financial department was converting.  The new system was used to account for the
invoicing and receipt of premium payments for the policy and generated the original

cancellation notices but not the credit memo.   As a result, when the November 28, 2003, date arrived, Liberty's new computer system still showed a $6,600 balance due for the premiums, and the policy was improperly cancelled for nonpayment of premiums.  Liberty contends that this action was "inadvertent."

On January 8, 2003, apparently after receiving information about the ERM-14 executed by Tonya Powell in August or 2003 and or/a copy of the October 22, 2003, NCCI communication to Liberty regarding the certificate change requested by Tonya Powell, the plaintiffs' agent, Leo DeOrnellas, wrote Liberty, stating:

> Re: NCCI - ERM-14
> Terry Powell Logging (Individual)
> Double T. Trucking, Inc. (Incorporated)
>
> Comments: I am in receipt of the above ERM-14 advising NCCI of combination of separate entities per the request of a certificate holder–Weyerhaeuser and the cover letter sent to Liberty Mutual by NCCI advising the above two entities are no longer combinable for experience rating.
>
> In all honesty, I must say that I disagree with the position since the two entities are commonly owned by Terry Powell owing [sic] 50%of Double T. Trucking, Inc., and 100% of Terry Powell Logging.  I have written this account thru the voluntary market for years having combinable experience rating.
>
> Furthermore, my records reflect that Liberty Mutual has endorsed the current policy 5-341175 to reflect the named insured to read Terry Powell Logging. When application was made thru the MS Assigned Risk market, the named insured was Double T. Trucking, Inc. Both entities are operating as I write this memo. What happened to Double T. Trucking, Inc.?

Thereafter, on January 14, 2004, DeOrnellas received a fax from Liberty containing a copy of the voided Certificate issued to Weyerhaeuser on August 8, 2003, when Liberty changed the name on the policy from Double T. to Powell Logging at the request of Tonya Powell.  This voided certificate was issued to Weyerhaeuser as a

8

result of the inappropriate cancellation on November 28, 2003.

On January 15, 2004, Liberty referred the policy to Liberty's investigation unit by email stating:

> Referral reason: I received a letter from this agent regarding the name change/erm-14 ownership ruling. I had to pull the file as I had no idea what he was referring to. In looking at the file, it appears the application came in as: Double T Trucking Inc. The insured requested a cert for Weyerhaeuser to list the name as Terry Powell Logging. We sent an erm-14. When the ERM-14 was received back, underwriting treated as a name change (50/50 to 100%) instead as a combination of separate entities and endorsed the policy to reflect the new name. The certs were issued as requested.  A copy of the ERM-14 was sent to NCCI. NCCI sent back a ruling that the two entities were not combinable. This policy cancelled for non pay effective 11/28/03, and they did not comply with PT. There is a physical audit set for expiration.
>
> I called the agent/Leo back to discuss. He advised the letter was sent as a heads up as he could not believe we changed the policy. The insured had asked him to help & he told her [Tonya Powell] it could not be done. She tried and succeeded. Leo is requesting something for his file to indicate there is no coverage in place & that we void the Weyerhaeuser Cert. Leo indicated we have none of the logging payroll on the policy, and said "good luck" when I advised that a final physical audit was pending. It also looks like the mod got reduced form 1.53 to 1.0 with the name change. Leo did verify that both entities are still in operation.

After the policy was cancelled, Liberty attempted to schedule and conduct an audit of the plaintiffs' payroll.  On February 3, 2004, one of Liberty's Case  auditors, Barney Finlen, issued a "Premium Audit Report", stating that the audit was being closed out due to lack of cooperation on the part of the insured.  On February 5, 2004, Liberty issued an audit exhibit to Powell Logging, based upon an *estimated* cancellation audit conducted by Finlen, which resulted in an estimated premium due on the policy of $4,416.

**The January 26, 2004, Reinstatement**

On January 26, 2004, Tonya Powell received a facsimile transmission from a "Michael" at Liberty stating that the prior void notice for the certificate on the policy at issue was terminated and that the policy was in force for both Powell Logging and Double T. He also stated that original certificates of insurance would be sent to the insured, the agent and the certificate holder (Weyerhaeuser). There is no indication in the record that this was done, nor is there any other explanation in the record concerning this fax or why it was issued. The fax reads as follows:

To: Tonya _____            Fax: 601-736-3251

Re: Certificates of Insurance _____ Date: 01-26-04

Account #: -341175 _____ Pages : 2

From: Micheal-                            W/Comp.

Certificate of Insurance: Original Certificates will be mailed to the insured,agent and the Certificate holder.

Notes: The following policies for Terry Powell Logging and for Double T Trucking, Inc have been reinstated on January 26,2004 The Void Notice has been terminated and the following policies Above as listed have been reinstated and are effective until 05-01-04.

**The Terry Sartin Injury**

At some point in or around March of 2004, Terry Sartin, an employee of one of the plaintiffs, apparently Double T., suffered a compensable on-the-job injury. When he attempted to procure medical treatment, Liberty denied the claim as the policy originally

issued to Double T. and endorsed to Powell Logging had been cancelled effective

November 28, 2003.  Terry Powell has testified that an attorney contacted him on

behalf of Sartin inquiring if he had workers' compensation insurance.  Powell informed

him that he did.  Nevertheless, the attorney apparently put Weyerhaeuser on notice of

the claim.  Powell testified that once he determined that the policy had been cancelled

in November of 2003, he paid for Sartin's medical treatment and Sartin's wages out of

his (Powell's) pocket to the tune of some $36,000 to $38,000 and that Sartin recovered

and returned to work.


**New Policies Issued for 2004**

On April 29, 2004, DeOrnellas submitted separate applications for workers'

compensation insurance on behalf of Powell Logging and Double T. In a letter to CIS,

DeOrnellas stated:

> Re: Terry Powell Logging & Double T. Trucking, Inc. I have spoken to
> NCCI to learn there is no mod for 2004 on Double T. Trucking, Inc.
> Because of the problems created by the insured and Liberty Mutual.
> There is a mod of 1.59 for Terry Powell Logging.
>
> Furthermore, I have clarified that Tonya Powell owns 50% of Double T.
> Trucking, Inc. and has no ownership in Terry Powell Logging so there is
> not combinability as to the experience modification.

On April 30, 2004, CIS issued separate Policy Binders to Double T and Powell

Logging, effective May 1, 2004, for a contract of insurance commencing that date until

May 1, 2005.  Liberty was again assigned by CIS to be the servicing carrier and issued

separate policies to Double T and Powell Logging.  However, these policies were

ultimately  cancelled on August 18,2004, for nonpayment of premiums.

**The Weyerhaeuser Contract Cancellation**

Terry Powell testified that he had entered into annual contracts to cut and haul timber for Weyerhaeuser and its predecessors for a number of years in December of each year.   On December 19, 2003, he and Weyerhaeuser executed a new contract for the period from January 1, 2004, to December 31, 2004.  These contracts generated approximately two million dollars per year in gross receipts for the plaintiffs and amounted to 95-99% of their annual income according to Terry Powell.  On July 13, 2004, Weyerhaeuser cancelled Powell Logging's contract.  It appears from the record that being put on notice of Sartin's workers' comp claim and discovering that the plaintiffs were without workers' compensation insurance to cover the injury may have led to the decision.  However, this fact is not clear from the record and is certainly not established to any reasonable probability.

## THE ISSUES

The plaintiffs filed their complaint asserting claims of negligence, gross negligence, breach of contract, negligent and/or intentional misrepresentation, breach of warranty, conversion, negligent disparagement, negligent and/or intentional tortuous interference and negligent or fraudulent inducement.  The plaintiffs claim damages caused by Liberty's November 28,2003, cancellation of the policy and the alleged resulting cancellation of the Weyerhaeuser contract and for the medical and wage expenses paid by Terry Powell on behalf of Terry Sartin as a result of Liberty's failure to honor his workers' compensation claim.

The defendants have filed the present motion for summary judgment asserting that each of the plaintiffs' causes of action fail for the following reasons: (1) Double T Trucking was not a party to the Weyerhaeuser contract at the time it was cancelled; (2) Liberty added Powell Logging to the policy based upon the plaintiffs' misrepresentation that Double T and Powell Logging had been combined; and (3) there is no evidence of a wrongful act which caused either of the plaintiffs' damages.

The defendants have asserted, separately, that the plaintiffs' claims for punitive damages fail because: 1) as an issuer of an Assigned Risk policy, Liberty is exempt from punitive damages as a matter of law; and 2) the plaintiffs fail to present evidence sufficient to show conduct on the part of Liberty that would meet the Mississippi test for the invocation of punitive damages.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the

13

evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  Id.  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his

14

motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The

movant accomplishes this by informing the court of the basis of its motion, and by

identifying portions of the record which highlight the absence of genuine factual issues.

*Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation

to respond unless the movant discharges [its] initial burden of demonstrating

[entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment

cannot be supported solely on the ground that [plaintiff] failed to respond to defendants'

motion for summary judgment," even in light of a Local Rule of the court mandating

such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented,

the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v.*

*National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the

nonmoving litigant is required to bring forward 'significant probative evidence'

demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting*

*Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary

judgment motion, one may not rely on mere denial of material facts nor on unsworn

allegations in the pleadings or arguments and assertions in briefs or legal memoranda.

The nonmoving party's response, by affidavit or otherwise, must set forth specific facts

showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also,*

*Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the]

15

court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## COMPENSATORY CLAIMS

After a thorough review of the record in this case, the court concludes that there are too many legitimate factual disputes to entitle the defendants to summary judgment on the plaintiffs' compensatory damage claims  There are also many issues that are not in dispute.  For instance, there is no question but that Liberty changed the name on the policy of insurance to reflect coverage for Powell Logging instead of Double T. and then failed to correct the mistake after being advised of the mistake shortly thereafter by NCCI.  There is also no dispute that Liberty wrongly, whether inadvertently or not, cancelled the policy at issue on November 28, 2003, for nonpayment of premiums. There is no dispute that on January 26, 2004, "Michael" with Liberty informed the insured that the policy was in force for Powell Logging and Double T. and that Weyerhaeuser, the agent and the insured would receive an updated certificate showing same and that did not happen.

There is no dispute that on July 13, 2004, Weyerhaeuser cancelled Powell Logging's contract and Terry Powell has testified unequivocally that Weyerhaeuser cancelled this contract after being told that he didn't have workers' compensation insurance to cover the March 2004 injury of Terry Sartin.  The plaintiffs have presented

16

significant probative evidence that Weyerhaeuser cancelled the Powell Logging contract as a result of this termination.  Whether or not the plaintiffs' version of the Weyerhaeuser cancellation is correct is, of course, disputed by the defendants.  The defendants also contend that Liberty changed the policy name as a result of the misrepresentations of Tonya Powell, which the plaintiffs dispute.  Based on all of the foregoing, the court concludes that the plaintiffs have met their burden of demonstrating a genuine factual dispute on the issue of liability.

The defendants also attack the plaintiffs' claims on the basis of insufficiency of evidence related to damages.  The primary evidence of damages in the present record comes from the affidavit and deposition testimony of Terry Powell.  The defendants attempt to diminish Powell's testimony as "self serving."  All testimony is self serving or it would not be relevant.  Will it convince a jury that the plaintiffs' are entitled to an award of money damages?  That is the sole province of the finder of fact and is an issue of credibility, not admissibility.  Nevertheless, the court concurs with the defendants that the plaintiffs' proof on the issue of damages is weak and will be judged carefully under the appropriate rules of evidence regarding its' ultimate admissibility.

## PUNITIVE DAMAGE CLAIMS

It is well settled in Mississippi that punitive damages are to be assessed only in extreme cases.  See *Gardner v. Jones*, 464 So. 2d 1144, 1148 (Miss. 1985).  "Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits."  *Life & Cas. Ins. Co. of*

*Tenn. v. Bristow*, 529 So.2d 620, 622 (Miss.1988).  Further,

> [a]s a general rule, exemplary or punitive damages are 'added damages' and are in addition to the actual or compensatory damages due because of an injury or wrong. The kind of wrongs to which punitive damages are applicable are those which, besides the violation of a right or the actual damages sustained, import insult, fraud, or oppression and not merely injuries, but injuries inflicted in the spirit of wanton disregard for the rights of others.

*Summers ex rel. Dawson v. St. Andrew's Episcopal School, Inc.*, 759 So.2d 1203, 1215

(Miss.2000) (citing *Fowler Butane Gas Co. v. Varner*, 244 Miss. 130, 150-51,141 So.2d

226, 233 (1962)).  See also, *Paracelsus Health Care Corp. v. Willard*, 754 So.2d 437,

442 (Miss.1999).  "In order to warrant the recovery of punitive damages, there must

enter into the injury some element of aggression or some coloring of insult, malice or

gross negligence, evincing ruthless disregard for the rights of others, so as to take the

case out of the ordinary rule."  *Id.* (citing 15 Am.Jur., Damages, Sec. 265, p. 698).

When deciding whether to submit the issue of punitive damages to a trier of fact, the

court is required to examine the totality of the circumstances as established by the

record, to determine if a reasonable, hypothetical trier of fact could find either malice or

gross neglect/reckless disregard in order to justify the imposition of punitive damages.

See *Ross-King-Walker, Inc. v. Henson*, 672 So.2d 1188, 1191 (Miss.1996).

Based on the foregoing well settled principles of law, the Mississippi Supreme

Court has instructed that "in order for the issue of punitive damages to warrant jury

consideration, [the plaintiff] must show that a question of fact exists as to whether the

aggregate of [the defendants'] conduct . . . evidences willful or wanton conduct or the

commission of fraud.  *Bradfield v. Schwartz*, --- So.2d ----, 2006 WL 1350051, *5

(Miss. 2006).  The *Bradfield* Court went on to discuss the statutory procedure for the

18

determination of whether the issue of punitive damages should ultimately be presented

to the jury.  In so doing, the court quoted the language of Miss. Code Ann. § 11-1-65

which provides

> (1) In any action in which punitive damages are sought:
>
> (a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.
>
> (b) In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.
>
> (c) If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact.
>
> (d) The court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier of fact shall determine whether to award punitive damages and in what amount.

Miss. Code Ann. § 11-1-65(1)(a)-(d).

After a careful review of the record in this case, the court concludes that the

plaintiffs have not come forward with significant probative evidence showing that there

is a genuine issue of fact that Liberty's conduct in this case rises to the level of

egregiousness to entitle them to punitive damages.  The most the plaintiffs have shown

is that Liberty was negligent - certainly not that the defendants acted with malice nor

gross neglect/reckless disregard nor does it evidence willful or wanton conduct or the

commission of fraud.  Therefore, the plaintiffs' punitive damages claims will be

19

dismissed, thus the court will not address the defendant's argument that they are exempt from punitive damages as a matter of law.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#52]** filed on behalf of the defendants is Granted to the extent that the plaintiffs' claims for punitive damages are dismissed with prejudice and Denied as to all other claims.

A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 26th day of April 2007.


*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE